## COMMON CARRIER—BAILMENT.

3 Dec.
41

[Lucas Circuit Court, March 30, 1895.]

†THE BOWLER & BURDICK COMPANY V. THE TOLEDO AND OHIO CENTRAL RAILWAY COMPANY.

1. LIABILITY OF COMMON CARRIER FOR LOSS OF MERCHANDISE CARRIED AS BAGGAGE, WHERE THE CARRIER HAD KNOWLEDGE OF THE CHARACTER OF THE SAME AT THE TIME IT WAS RECEIVED FOR CARRIAGE.

Where the baggage agent of a railroad company, without objection receives a trunk from a passenger and gives him a check for it, with knowledge that such trunk contains valuable merchandise, and places the same on one of its trains for carriage, where it is subsequently destroyed by the negligence or carelessness of said company, the latter is liable for the loss of such merchandise, upon the same principle that it would be liable, in case such merchandise was ordinary baggage.

2. LIABILITY OF COMMON CARRIER FOR LOSS OF MERCHANDISE CARRIED AS BAGGAGE, WHERE THE CARRIER IS WITHOUT KNOWLEDGE OF THE CHARACTER OF THE SAME.

Where such agent receives from a passenger a trunk, containing valuable merchandise, without any knowledge as to its contents, and the passenger makes no disclosure concerning the character of the same, there is no implied undertaking of the railroad company to insure the safe carriage of such merchandise, but the company, by accepting the same for carriage, assumes the relation thereto of an ordinary bailee, and is only bound to take such care of the property as a man of ordinary prudence would exercise over his own, under like circumstances.

HAYNES, J. (orally.)

In this case a petition in error is filed for the purpose of reversing the judgment of the court of common pleas, and for the reason, amongst others, "that said court erred in granting the motion of the defendant in error to direct a verdict for defendant in error."

The action was brought in the court of common pleas to recover from the defendant railway company the value of a large amount of jewelry; and the facts set up in the petition are, substantially, that the plaintiff had upon the road a traveling man, named Burdick, who took passage upon a train of defendant company at a place called Glouster, in the state of Ohio, to ride to another place, called Breman, upon the line of defendant's railroad. And plaintiff claimed that Burdick had in his possession as such salesman "two trunks belonging to plaintiff, containing a large stock of watch movements, watch cases, chains, rings and other miscellaneous jewelry and jewelers' material and findings, of the value of $4,789.12, as set forth in the schedule attached and marked "Exhibit A." And plaintiff claims also that "said salesman had in his possession, at said time a certain passenger railroad ticket, known as a thousand-mile commercial ticket, bearing the name 'Wheeling and Lake Erie railway,' and numbered 9114, form H., duly issued to said salesman for a valuable consideration, by authority of defendant, and entitling him to transportation over the said lines of railway." And the petition sets forth that said baggage was delivered "to the baggage agent at said station at Glouster, to wit, to J. E. Jones, who was charged with the duty of receiving baggage and other property for carriage as baggage, from thence to points along defendant's said line of railway, and plaintiff's said salesman and agent duly requested the said baggage agent to check the said trunks with their contents to Breman, a certain station on defendant's said line of railway." That thereupon the baggage agent gave Burdick a check; and, in addition to that,

* The judgment in this case was affirmed by the Supreme Court; opinion, 57 O. S., 38. For a subsequent decision of the circuit court, see 9 Circ. Dec., 465.

Vol. VI. O. C. D. 26

Burdick paid to the baggage agent thirty cents for the weight of said baggage in excess of a certain amount. And it states that upon that being done himself and said baggage were received on board the train. Plaintiff further says that in consequence of the various matters set up, "defendant undertook to carry said trunks safely to said station of Breman; and that said baggage agent, said Jones, well knew at the time of receiving and checking said trunks as aforesaid, and at the time the same were so placed on said train, that the same contained merchandise of the kind aforesaid, and of great value, and that the said trunks did not contain the personal baggage of the plaintiff's said salesman and agent." It then sets up that the train started upon its journey and proceeded to a certain point, at which point another locomotive, running in an opposite direction, upon said railroad, collided with the train "and caused a head-end collision of the said train with the said other locomotive, and the said train was thereupon derailed, set on fire and burned, together with plaintiff's said trunks and the said contents thereof, all of which were then and there lost and destroyed." It then proceeds to set up that when said train was on fire said Burdick notified the agents at that point, the conductor, engineer and other agents of the company that said valuable stock of jewelry of plaintiff's was in the baggage car of said train, and requested them to remove said trunks and to assist him in removing them from said car, but that they failed and neglected so to do; and it says that the same could have been rescued and saved if the company's agents had assisted Burdick in the matter. He alleges that the collision and fire were caused through the negligence of defendant's locomotive engineer who had charge of a certain locomotive that day which collided with said passenger train, and that it was the neglect of the engineer that caused the collision; that defendant's officers and agents negligently drove together the locomotive drawing said train and another locomotive running in the opposite direction at rapid speed.

There is a general denial on the part of the defendant of the allegations of the petition.

Upon the trial of the case evidence was given by the plaintiff tending to show that the agent, Burdick, was at Glouster with these trunks and samples; that he was at the hotel and had these samples on exhibition at that point; that he had spoken to the railway agent, or, in any event, that the baggage agent of the railway company was there for the purpose of seeing in regard to the baggage, or making some inquiries in regard to it, and it is claimed that while this agent was at this room at the hotel he saw the contents of these trunks spread out; that is to say, he saw, or might have seen all the samples of the agent in that room. Evidence was then given tending to prove that these samples were afterwards placed in these trunks and taken to the depot; that they were in two trunks known as jewelry trunks, of a peculiar form, put together in a peculiar manner with very strong iron straps on the corners, metal covering for the protection of the trunks, such as were commonly known as jeweler's trunks. At the time that the agent of the company gave to Burdick the check for his trunks, it is testified that Burdick paid him for the extra charges for the carriage of the trunks; and evidence was given tending to show that Burdick and his trunks being on board, the train proceeded on its way, and that the injury to the train was caused by the manner hereinbefore stated. There was an extra locomotive which had been used for the purpose of pulling a freight train over a high point between Glouster and another station, and, after it had got over this high place, it was returning to the point from which it had started. Between the point where the locomotive was situated at this time and the next station to which it was returning was a distance of several miles, which would require a certain number of minutes for the locomotive to make at its ordinary rate of running from one station to the other. The engineer in charge of the locomotive looked at his watch, and in looking, it is said, that he mistook the figures upon the face of the dial and read it "3

o'clock," when it was in fact fifteen minutes past three. He started to make the next station, but instead of having twenty-two or twenty-three minutes in which to make the station, as he supposed he had, he had but six minutes. Before he reached the next station his locomotive collided with the train with the consequences which have been stated.

Some evidence has been given tending to prove that Burdick made a request to the employees of the company to help him get his trunks out of the burning car; but that point was not discussed before us, and no special stress was laid upon it.

Upon the conclusion of the plaintiff's testimony in the court below, upon the motion of the defendant, the court directed the jury to return a verdict for the defendant, which was accordingly done and judgment was entered upon it

A motion for a new trial was filed that was overruled and judgment entered, and the case was brought here.

The points which have been argued before us have taken quite a range; but, in the view which we have taken of the case, it will be necessary to discuss but one or two of the points made.

It is contended on the part of the defendant company that there is no liability upon the part of the company for the reason that the samples which were in the trunks at the time they were being carried were not any part of the baggage of a passenger; that as a passenger he had no right to carry that class of goods. The plaintiff claims in reply to that, that the railway company had knowledge of the contents of these trunks, and if the baggage agent received the trunks as baggage and put them on board its train as baggage, having knowledge of their contents, that that bound the railway company, and the railway company would be liable for the same as baggage. Further than that, it is claimed that a duty arises in regard to this property other than that which would arise simply as a carrier of baggage; it is claimed on the part of the plaintiff in error that if the company received these trunks they were bound to carry them to their destination, and that they would be liable as bailees for any act of negligence on the part of the company which resulted in the destruction of the property; that while they would not be insurers of the property in the ordinary sense of insurers of baggage, still they would be liable for their negligence in the destruction of the property. And it is claimed on the part of the plaintiff in error that the defendant, through its agents, was guilty of negligence, and of gross negligence, in the act which resulted in the collision and the destruction of the plaintiff's property. It is also claimed on behalf of the plaintiff in error that the defendant company did have knowledge of the contents of the trunks, because of the facts: (1) That the agent who called at the hotel, saw and knew that Burdick was a traveling man; that he was there selling goods; that he had as salesman there, his samples consisting of jewelry, watches, etc., articles of that kind which he in fact had in his trunks at the time of the injury, and that that knowledge of the agent was the knowledge of the company; that the trunks were delivered very soon after that—within a day or so—to said agent at the railway station, receipted for by him and checked by him as the agent of the company at the station.

I should remark at this point, that this agent was not the chief agent of the company at that place, but he was an assistant. The agent at that point was sick, and this, his assistant, was filling his place and occupying the position of agent of the company in the checking and delivery of baggage.

Some evidence was offered by the plaintiff, and it claimed that it had the right to offer evidence to show that the company was in the habit of receiving this kind of trunks as baggage without inquiry as to their contents; that it was a custom to carry this class of trunks by a certain class of traveling men, who were so numerous that their character and their business was well known, and the character of their trunks was well known, so that while the company received the trunks without making any inquiry in regard to their contents, it did so knowing that the men who carried them were traveling agents of jewelers and that the

trunks contained jewelry. We think that is a kind of evidence that should be very sparingly received. It certainly ought to be shown in order to establish a custom that the parties who received trunks of that kind had knowledge in regard to their contents; however, we think that question is not very material to the case as it at present stands.

Very full briefs have been filed in the case and a large number of authorities have been cited. I shall refer, however, to but two or three of them in arriving at a disposition of the case.

Counsel for plaintiff in error, as he says, prepared his case and offered his evidence upon the trial intending to meet the state of facts necessary to make a case indicated by the supreme court of the United States in *Humphreys* v. *Perry*, 148 U. S. Reports, 627. In that case there is a full discussion of the cases bearing upon the question, by Mr. Justice BLATCHFORD, who delivered the opinion of the court. In that case it appears that "A traveling salesman for a jewelry firm bought a passenger ticket for a passage on a railroad, and presented a trunk to be checked to the place of his destination, without informing the agent of the company that the trunk contained jewelry, which it did, and without being inquired of by the agent as to what it contained. He paid a charge for overweight as personal baggage, and the trunk was checked. It was of a dark color, iron bound and of the kind known as a jeweler's trunk. It had been a practice for jewelry merchants to send out agents with trunks filled with goods, the trunks being of similar character to the one in question, and, as a rule, they were checked as personal baggage. But there was no evidence tending to show that the railroad companies, or their agents knew what the trunks contained. It was held: (1.) There was no evidence showing, or tending to show, that the agent of the railroad had actual knowledge of the contents of the trunk. (2.) There was no evidence from which it could fairly be said that the agent had reason to believe that the trunk contained jewelry. (3.) The agent was not required to inquire as to the contents of the trunk so presented as personal baggage. (4.) The company was not liable for the loss of the contents of the trunk. The cases on the subject reviewed."

Now, without discussing the cases referred to by that court, we may say that it seems to us that the weight of the authority is, that if the baggage agent of the company, at the time he received the baggage and gave a check for it, had knowledge that the baggage contained merchandise of the kind claimed to have been in these trunks, and received it, without objection, *as* baggage, and placed it on the train, that in case the trunk or merchandise was lost or destroyed the company would be liable for the same upon the same principle that it would be liable for the ordinary baggage of a traveling man. And upon that point it also appears to us that there was sufficient evidence offered before the jury tending to show that the baggage agent had knowledge at the time of checking the trunk that same contained merchandise, required that the court should have submitted the question whether the agent of the company had knowledge or not to the jury and allow them to pass upon it.

But, back of that is another question, that is, in my judgment, of more importance than that, and that is the question as to the liability of the company as a bailee of the property. Now, in the case to which I have already referred—in 148 U. S., the court made citation of some authorities and made a very full statement of them. Amongst others they refer to the case of *Michigan Central Railroad* v. *Carrow*, 73 Ills., 348. I will refer at this point to that case and the authorities which are there cited, because it seems to be an important case. That is also a case where a trunk had been taken to the depot by a traveling agent and placed in the care of the railway company and was checked as ordinary baggage, there being nothing about the trunk to indicate its contents, and the same was consumed by fire while being carried by the company between certain points,

the company not being guilty of gross negligence in not attempting to extinguish the fire or save the baggage, and it was held that the company was not liable for the contents of the trunk. In discussing the question, they say, upon page 353:

Upon the doctrine of these cases, it is very clear appellant was not a common carrier of the goods destroyed. Appellee gave the agents of the company no notice whatever his trunk contained valuable merchandise. No one knew better than appellee the company did not carry merchandise as baggage, free of charge, and without notice of the contents of the trunk—there is neither reason nor authority for holding the company liable as an insurer against loss. In *Cahill* v. *L. & N. W. Ry. Co.*, WILLIS, J., very aptly remarks, that 'where a passenger takes a ticket at the ordinary charge, he must, according to common sense and common experience, be taken to contract with the railway company for the carriage of himself and his personal baggage only, and that he can no more extend the contract to the carriage of a single package of merchandise than of his entire worldly possessions.' So we say in this case, it was not in the power of appellee to extend the liability of the company on account of his own convenience. There was no undertaking to carry merchandise, and he had no right to impose his goods subtilely upon the company, and then seek to make the obligation that of a common carrier. If he desired to have his merchandise or wares go upon the train with him, it was but just to the carrier he should disclose its nature and value, and if the company then chose to treat it as baggage, the liability of a common carrier would attach, but not otherwise.

Which, in my own individual judgment, is very sound doctrine. But in further discussing this case, they make some further statements and ruling in it to which I will refer. After discussing the case at some length further, they say:

"It is not intended to declare, because the company may not be liable as a common carrier or bailee for hire, its servants may, with impunity, steal the contents of the package instrusted to its care, nor omit all care for its safety. The negligence, however, that would render the company liable where it has no notice, and the passenger fails to give notice, his baggage contains anything else other than baggage proper, must be that which is defined as "gross negligence," being that high degree which indicates the absence of the slightest care. Gross negligence has always the element of recklessness. It can hardly be said to be gross with that element wanting." And they further say:

"The bailment in this instance must be regarded as having been made for the exclusive benefit of appellee. It could be nothing else, for, as we have seen, the company had no knowledge it had in its possession valuable merchandise. Holding, as we do, the company was only a bailee, without reward, as to the contents of appellee's trunk, it was only obligated to slight care, and could not be answerable for gross neglect. But the evidence shows that the company took more than slight care of the goods. Certainly there was no gross negligence, within any definition that can be given of that term, on the part of the employees in charge of the train."

And they therefore hold that the judgment of the court below which had been in favor of the appellee should be reversed.

Now, going back to this case in the United States supreme court, I will say that court discussed the case of *Michigan Central Railroad Co.* v. *Carrow* and also the case of *Haines* v. *Chicago*, 29 Minnesota, and *Pfister* v. *Central Pacific R. R.*, 70 California, and they then say:

"In the present case there is no allegation in the intervening petition of any gross negligence in the receivers, nor does the evidence make out any."

It is said that they at least inferentially held, or that they would have held, if there had been any gross negligence shown by the evidence that the company was liable. I, myself, do not think that that inference should be drawn from it; they simply say there is no evidence upon the point, and therefore they cannot hold the company liable, even if the law should be as the parties claim.

This case, however, in my judgment, must be decided by us upon the case in 35 O. S., *The Pennsylvania Company* v. *Miller & Co.*, which will be found at

page 541. In that case a party had taken passage on a Pennsylvania company train, and had delivered his valise to a baggage agent and received a check for it, and it had been put on board of the train and carried to its place of destination, where it arrived that evening, and the party himself went into the hotel attached to the depot and staid during that night, and the next morning he went to find his baggage and ascertained that during the night it had been stolen from the baggage room where it had been placed. In that case the court say:

"The valise in question having been safely carried to its place of destination and there received by the agent of the carrier and placed in its warehouse, the question arising on the charge is, whether the rule laid down by the court for the guidance of the jury, prescribes a higher standard of care than the law requires. It is claimed, on behalf of the carrier, that it does; and that, if the carrier can be held liable at all, it can only be for gross negligence."

As was said in *Griffith v. Zipperwick*, 28 O. S., 388, " The term *gross negligence* is scarcely susceptible of legal definition; but there is a decree of care (indefinitely varied by the nature of the deposit and the circumstances of the case) which the depositor has a right to expect from the depositary, the want of which is so designated, and will render the depositary liable if a loss results therefrom."

Accordingly, it was held in that case that good faith requires, generally, that a bailee, who is only liable for gross negligence, should keep the goods intrusted to him with as much care as he ordinarily keeps his own, of the same kind; and that he should also keep them with such a degree of care as is reasonable, with reference to the nature of the goods, and the particular circumstances of the bailment.

In the present case the valise did not contain what was properly baggage. The contents consisted of samples of merchandise, which the agent of the plaintiff carried with him to facilitate his business in making sales. The implied undertaking of the carrier, to *insure* the safe carriage of baggage, did not, therefore, extend to those goods. He was not, however, for this reason relieved of all responsibility in regard to the safe carriage and keeping of the property. By voluntarily taking it into his charge, and finally putting it in his warehouse for safe keeping, he assumed the relation to it of an ordinary bailee.

The court told the jury that the duty growing out of this relation, was to take such care of the property as an ordinarily prudent man would of his own property under like circumstances.

With the general rule thus stated, we find no fault; and a less degree of care ought not, in our opinion, to be allowed.

And they held that the evidence in the case did not warrant the verdict, and reversed the judgment of the court below. I will now read the second division of the syllabus in the case:

"The implied undertaking of a carrier to insure the safety of baggage, does not extend to the contents of a trunk, consisting of samples of merchandise, which the passenger, a traveling salesman, carries to facilitate his business in making sales. But the carrier, by taking the property into his charge and putting it in his warehouse for safe keeping, assumes the relation to it of an ordinary bailee, and he is bound to take such care of the property as a man of ordinary prudence would of his own, under like circumstances."

It is very earnestly urged here by counsel for defendant in error, that the only point decided in that case was, that the liability of the company only commenced at the time of putting the baggage into the depot and that that liability was only that of a bailee, and that the rule was not intended to be pressed further than that. But it seems to us, after a careful reading of the decision of the court and the syllabus of the case, that the court held, and intended to hol hat the obligation of the company from the time of the taking of the propert into its possession for carriage, was that of an ordinary bailee. Entertaining that

view, we are of the opinion that the court of common pleas should have submitted to the jury the question as to whether the defendant company had been guilty of negligence such as would make it responsible for the loss which occurred here. Whether that should be, under this decision, ordinary negligence, or a high degree of negligence, would be for the court to say to the jury. It seems to me that the supreme court of this state differs somewhat from the supreme court of Illinois as to the degree of negligence required to fix a liability upon the company and the degree of negligence for which it will be responsible. I will say for myself, that I concur in this opinion with a great deal of reluctance, but, because of the decision of our own supreme court, I feel that I am bound to concur in this opinion. I have felt for myself that in a case of this kind there should be no liability as a bailee on the part of the defendant company. The property is placed by the passenger in the charge of the company without a statement as to its contents, without any information that he is carrying a large amount of property—he places it in their custody surreptitiously; he seeks to obtain the transportation of property of a large amount in value, without any cost or expense to himself, and he wants to cast upon the defendant company the liability at least of a bailee of some kind, and to make it responsible for the property in case of negligence whereby it is lost. Now, his contract is, to carry himself; and impliedly the contract is that he may carry certain personal baggage. There is a contract between him and the company in relation to that matter. There is no contract between him and the company for anything else, and it seems to me when he makes a claim for loss of merchandise, that it is a sufficient answer for the company to say, "We have never entered into a contract with you in regard to this property; we have never knowingly received it and it never came into our care with our knowledge or consent." And that should be a sufficient answer to any charge of liability on the part of the company as bailee. But we think the supreme court have held, in the case which I have cited, and other learned courts have held—and there are none of the supreme courts that have held to the contrary so far as I know—that there is a certain degree of liability; that if the property is in the possession of the company, it is liable, at least, for acts of gross negligence whereby the property is destroyed. In case the company knowingly receives the merchandise as baggage, the rule may well be different—it can refuse to take it, or if it choose, it has the power to charge for its carriage rates corresponding to the responsibility assumed.

In this view of the case, the judgment of the court of common pleas will be reversed and the case remanded for a new trial.

*Gilbert & Hills*, for Plaintiff in Error.

*A. W. Scott*, for Defendant in Error.